UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Pamala Teresa Hannah Mack, | ) | C/A No. 5:12-cv-02778-KDW |
| Plaintiff, | ) | |
| v. | ) | ORDER |
| Carolyn W. Colvin, Acting Commissioner of the Social Security Administration,[1] | ) | |
| Defendant, | ) | |
| v. | ) | |
| Social Security Administrative Record, | ) | |
| Interested Party. | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil Rule 83.VII.02 DSC for final adjudication, with the consent of the parties, of Plaintiff's petition for judicial review. Plaintiff brought this action pro se pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), finding that Plaintiff was overpaid $17,326.00 in Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act") from January 2004 to December 2007, and that Plaintiff was not without fault in causing and accepting the overpayment. Because Plaintiff is proceeding as a pro se litigant, the court is bound to construe her pleadings liberally. Having carefully considered the parties' submissions and the applicable law, the court *affirms* the Commissioner's decision, as discussed herein.

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Carolyn W. Colvin for Michael J. Astrue as Defendant in this action.

I. Relevant Background

   A. Procedural History

On October 16, 1986, Plaintiff was found disabled and was awarded Childhood Disability Benefits. Tr. 13. On January 24, 2007, the Commissioner sent Plaintiff a Notice of Continuing Disability Review requesting, in part, information about Plaintiff's recent employment history. Tr. 16-17. Plaintiff completed and submitted the forms that accompanied the Notice of Continuing Disability Review, stating that she had been working 25 hours per week as a certified nurse's assistant since 2005. Tr. 20-33. In December 2007, the Social Security Administration ("SSA") informed Plaintiff that she received an overpayment of disability benefits totaling $17,326.00, based on benefits received while she performed substantial gainful activity from January 2004 to December 2007, for which she was responsible for refunding to the SSA. ECF No. 36 at 2.

On July 15, 2008, Plaintiff filed a request for waiver of overpayment. Tr. 35-41. The waiver was denied in a Report of Contact dated July 19, 2008. Tr. 42. On October 1, 2008, Plaintiff was sent a Notice of Appointment, requesting that she go to the Georgetown, South Carolina field office on October 10, 2008, to discuss the denial of her waiver request, and that she bring certain financial records to the appointment. Tr. 44-45. Plaintiff did not attend the appointment, and did not ask the SSA to reschedule the appointment. Tr. 43. Thus, the field office manager determined that there was no basis for changing the decision denying Plaintiff's request for waiver. *Id.* Plaintiff subsequently filed a Request for Hearing, Tr. 46, and a hearing was held before an Administrative Law Judge ("ALJ") on November 19, 2009. Tr. 125-130. Plaintiff, who was represented by counsel, appeared and testified. *Id.* Plaintiff's counsel also presented arguments. *Id.* In a decision dated January 26, 2010, the ALJ found that Plaintiff was

overpaid benefits in the amount of $17,326.00, and that she was not without fault in causing this overpayment and, therefore, recovery could not be waived. Tr. 10-15. The Appeals Council denied Plaintiff's request for review on January 4, 2012, adopting the ALJ's decision as the "final decision" of the Commissioner. Tr. 5-9.

II. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g); *see* 42 U.S.C. § 1383(c)(3) (applying § 405(g) judicial review provisions to SSI matters). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be

3

affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

III. Discussion

Plaintiff requests that the court review the ALJ's decision that she was overpaid benefits and that she was not without fault in causing and accepting the overpayment. ECF No. 35. Plaintiff argues that the ALJ did not consider all the evidence presented when making his final decision. *Id.* at 1. Plaintiff contends that when she applied for Social Security benefits she was told "to not exceed a certain income through employment." *Id.* Plaintiff alleges that she "made Social Security aware" that she was attempting to become gainfully employed but due to her sickle cell anemia condition, there may be times when she was too sick "to work consistently especially during the winter months." *Id.* Plaintiff contends that she informed SSA that her medical bills sometimes exceeded her monthly income, and that she was told that her medical expenses would be included when "determining how much money [she] was actually earning." *Id.* Plaintiff argues that she reported her earnings to SSA, along with her medical expenses, and she was "informed by them everything was fine." *Id.* Plaintiff argues that during this period of employment that she had "several sickle cell crises"[2] that caused her medical expenses to exceed her take home pay. *Id.* Plaintiff alleges she never kept her employment from SSA and she "provided copies of everything they asked." *Id.* at 2. Plaintiff also contends that the ALJ told her during her hearing that "he could not see how one person could take full responsibility for

---

[2] Sickle cell disease causes red blood cells to form into a crescent shape, like a sickle. The sickle-shaped red blood cells break apart easily, causing anemia. Sickle red blood cells live only 10-20 days instead of the normal 120 days. The damaged sickle red blood cells also clump together and stick to the walls of blood vessels, blocking blood flow. This can cause severe pain and permanent damage to the brain, heart, lungs, kidneys, liver, bones, and spleen. Severe pain is an emergency called acute sickle cell crisis. *See* http://www.webmd.com/pain-management/pain-management-sickle-cell-disease (last visited Feb. 10, 2014).

4

what happened … and said [the parties] were equally at fault in this situation." *Id.* at 2.  Plaintiff argues that the ALJ did not include this information in his report. *Id.*

The Commissioner contends that substantial evidence supports the ALJ's decision that Plaintiff's overpayment of benefits should not be waived.  ECF No. 36 at 4.  The Commissioner argues that there is no evidence that Plaintiff told SSA about returning to work "despite the fact that regular reminders about the duty to report earnings are sent to disability benefits recipients." *Id.* at 5.  The Commissioner contends that although Plaintiff argues that she informed SSA "about her work activity and was repeatedly assured that she would be notified if her earnings reached the SGA [substantial gainful activity] level rendering her ineligible for benefits," the SSA "does not have record of such conversations, or of Plaintiff's reporting of SGA prior to the forms associated with her Continuing Disability Review, and Plaintiff has not provided the names or contact information of the people with whom she alleges she spoke." *Id.*  The Commissioner further argues that the July 2008 Report of Contact "indicated that SSA never received any information regarding work activity despite regularly sending reminders and mailers regarding her duty to provide such information." *Id.* at 6.  The Commissioner argues that Plaintiff alleges for the first time in her brief that she was told that her medical expenses would be taken into account when determining her earnings. *Id.*  The Commissioner argues, however, that this information is not substantiated by the record and, nevertheless, such information is used to determine if repayment would be a hardship to a claimant. Because the ALJ found Plaintiff was at fault for the overpayment, the second prong concerning financial hardships and inequities was not considered. *Id.*  The Commissioner finally contends that although Plaintiff argues that she submitted copies of her paycheck and expenses, that the record shows that Plaintiff did not begin submitting this information until 2009.  *Id.* at 6.

In reply, Plaintiff argues that the facts have been "substantially misrepresented in this report" and reiterates the arguments contained in her initial brief. ECF No. 37. Plaintiff requests that the court contact Mrs. Pressley, Caseworker, to verify her visits to the office. *Id.* at 1. Plaintiff also explains that she did not attend her October 10, 2008 conference because she changed her mailing address and her mail was held for 30 days. *Id.*

"The Social Security Act provides that '[w]henever the Commissioner . . . finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made.' 42 U.S.C. § 404(a)(1)." *Robson v. Astrue*, No. 3:09-cv-2553-MBS, 2011 WL 4434040 at *5 (Sept. 22, 2011). The Act permits waiver of overpayment only if the beneficiary can demonstrate both that he or she is 1) without fault and 2) that recoupment would defeat the purpose of the Act or recovery would be against equity and good conscience. 42 USC § 404(b)[3]; 20 CFR § 404.509. If the Commissioner determines that a claimant is at fault for the overpayment, the inquiry ends. *See Garnett v. Sullivan*, 905 F.2d 778, 782 (4th Cir. 1990). "The overpaid individual has the burden of proving that he [or she] was without fault." *Robson*, 2011 WL 4434040 at *5 (citing *Anderson v. Sullivan*, 914 F.2d 1121, 122 (9th Cir. 1990)).

Neither good faith nor the absence of bad faith suffices to establish that the overpaid individual is without fault. *Center v. Schweiker*, 704 F.2d 678, 679-80 (2d Cir. 1983). While the Act itself does not define "fault," the implementing regulations, in relevant part, provide the following definition:

---

[3] Section 404(b) provides:

[I]n any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such an adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience. 42 U.S.C. § 404(b).

> [I]n determining whether an individual is at fault, the Social Security Administration will consider all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations . . . the individual has. What constitutes fault ... on the part of the overpaid individual . . . depends on whether the facts show that the incorrect payment to the individual . . . resulted from:
>
> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 CFR § 404.507.

In determining that Plaintiff was "not without fault," the ALJ properly discussed the criteria found in 20 CFR § 404.507. All that is required by the Regulation is a finding that Plaintiff failed to furnish information that she knew, or should have known, was material, or that she accepted a payment that she knew, or could have been expected to know, was incorrect. The ALJ's finding that Plaintiff should have known of her duty to report earnings and/or could have been expected to know that the payments she accepted were incorrect is supported by substantial evidence.

The fault determination requires the decision-maker to evaluate whether a reasonable person, possessing the same mental and physical limitations as the claimant, could believe that he was entitled to continued social security benefits. *Harrison v. Heckler*, 746 F.2d 480, 482 (9th Cir. 1984). The Agency will consider all pertinent circumstances, including the individual's age, intelligence, education, and physical and mental conditions. 20 CFR § 404.507. At the administrative hearing, Plaintiff's counsel did not address the issue of fault, and instead focused on Plaintiff's inability to repay the overpayment and need for a waiver. Tr. 126-28. In response

to an inquiry from the ALJ, Plaintiff testified that "some years ago" she informed someone at the county SSA office that she was working. Tr. 128-29. The ALJ found that there was "no evidence that [Plaintiff] reported her return to work to the Social Security Administration despite the fact that regular reminders about notification requirements are sent to Social Security recipients."  Tr. 14.   In his report, the ALJ referenced Plaintiff's hearing testimony that "she advised the Social Security Administration of her work activity" and that Plaintiff "testified that she does not have excess financial resources."  Tr. 15. The ALJ noted that he carefully considered the documentary evidence, the hearing testimony, and the arguments presented at the hearing in determining that Plaintiff was "not without fault in causing and accepting the overpayment."  Tr. 15.  The ALJ found that Plaintiff was informed of her duty to report earnings if she returned to work when she applied for and received benefits, and that Plaintiff "knew or should have known" that her returning to work after the trial work period terminated would affect her social security disability checks. *Id.*   The ALJ stated that because he found Plaintiff was "not without fault" for the overpayment of benefits, that it was not necessary for him to determine whether "repayment of the overpayment would defeat the purpose of Title II of the Act, or be against equity and good conscience." *Id.*

The ALJ's decision provides an adequate discussion of how he considered the facts he relied upon to support his finding that Plaintiff was aware that she had to report "earnings if she returned to work" and there was no evidence that Plaintiff "reported her return to work."  Tr. 14-15. Because the ALJ found that Plaintiff was "not without fault" for the overpayment of benefits, there is no error in the ALJ not considering Plaintiff's financial resources and whether recoupment of the overpayment would defeat the purpose of the Act or recovery would be "against equity and good conscience."  *See Garnett*, 905 F.2d at 781.  The court finds that the

8

ALJ properly considered all relevant regulatory factors, adequately explained the reasons for his determinations, and his decision is supported by substantial evidence.

IV. Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds that Plaintiff has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. *See Craig*, 76 F.3d at 589; *see also* 42 U.S.C. § 405(g). Therefore, it is hereby ORDERED that the Commissioner's decision be affirmed.

IT IS SO ORDERED.

February 10, 2014      Kaymani D. West
Florence, South Carolina      United States Magistrate Judge